CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 28 2019

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| **SUSAN O. CARDOZA,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case Number: 4:19CV00003 |
| **MEDICAL DEVICE BUSINESS SERVICES, INC., et al.,** | ) |
| **Defendants.** | ) |

## NOTICE OF REMOVAL

Defendants Medical Device Business Services, Inc. ("MDBS"), Johnson & Johnson Services, Inc., and DePuy Synthes Sales, Inc. (collectively, "removing defendants"), through undersigned counsel, hereby remove the state-court action entitled *Susan O. Cardoza v. Medical Device Business Services, Inc., et al.*, Civil Action No. CL18-850, filed in the Circuit Court for the City of Danville, in the Commonwealth of Virginia. Removal is warranted under 28 U.S.C. § 1441(b) because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. § 1332.

In support of removal, removing defendants state as follows:

1.     On or about December 13, 2018, plaintiff commenced this action against removing defendants and CeramTec GmbH, CeramTec North American Corp. (collectively, "CeramTec"), Danville Regional Medical Center, LLC ("DRMC"), Spectrum Medical Inc. ("Spectrum" and, together with DRMC, the "healthcare provider defendants"), and Matt Wimbish by filing a complaint in the Circuit Court for the City of Danville, in the Commonwealth of Virginia, bearing case number CL18-850.

2. Plaintiff alleges that she suffered various injuries as a result of being implanted with a CERAMAX Ceramic Total Hip System hip implant. (*See* Compl. ¶¶ 2, 21-33.) However, as the medical records attached to plaintiff's Complaint make clear, plaintiff was actually implanted with a Pinnacle Cup System that contained various ceramic components, including a CERAMAX liner, head and stem. (*See* Ex. A to Compl. at 1.)

3. This is one of thousands of product liability cases pending around the country involving the Pinnacle Cup System. On May 23, 2011, the Judicial Panel on Multidistrict Litigation created a multidistrict litigation ("MDL") proceeding for all claims involving the Pinnacle Cup System. That proceeding is pending in the United States District Court for the Northern District of Texas before Judge James E. Kinkeade and has been designated MDL No. 2244: *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*.

4. Removing defendants intend to seek the transfer of this action to the MDL proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in R.P.J.P.M.L. 7.1.

5. As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

## I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

6. This Court has subject-matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

### A. The Parties That Are Not Fraudulently Joined Or Misjoined Are Diverse.

7. Plaintiff alleges that she is a resident of the Commonwealth of Virginia and is thus presumed to be a citizen of Virginia. (Compl. ¶ 1.)

8. MDBS is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

9. Johnson & Johnson Services, Inc. is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Brunswick, New Jersey, and, therefore, is a citizen of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

10. DePuy Synthes Sales, Inc. is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Raynham, Massachusetts, and is therefore a citizen of the States of Delaware and Massachusetts for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

11. CeramTec is alleged to be a resident of the State of South Carolina and is presumed to be a citizen of that state. (*See* Compl. ¶ 6.)

12. Plaintiff does not allege the citizenship of CeramTec GmbH. However, on information and belief, that defendant is a citizen of Germany.

13. The healthcare provider defendants and Mr. Wimbish are alleged to be residents of the Commonwealth of Virginia and are presumed to be citizens of Virginia. (*See* Compl. ¶¶ 7-9.)

14. Thus, plaintiff is diverse from all defendants except for the healthcare provider defendants and Mr. Wimbish.

15. Although the healthcare provider defendants and Mr. Wimbish are presumably citizens of Virginia, their presence in this action does not defeat diversity jurisdiction.  This is so because:  (1) both Mr. Wimbish and the healthcare provider defendants are fraudulently joined as to the two claims asserted against them; and (2) even if the healthcare provider defendants were not fraudulently joined, the claims asserted against them are fraudulently misjoined with the product-liability claims against the diverse defendants.

16. Accordingly, there is complete diversity of citizenship between plaintiff and the properly joined and served defendants and thus, removal is proper.  28 U.S.C. §§ 1332(a), 1441(a).

### B. Mr. Wimbish And The Healthcare Provider Defendants Are Fraudulently Joined.

17. Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where, as here, "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court."  *Beaudoin v. Sites*, 886 F. Supp. 1300, 1302 (E.D. Va. 1995) (citation omitted); *see also Carter v. Hitachi Koki U.S.A. Ltd.*, 445 F. Supp. 2d 597, 600 (E.D. Va. 2006) (explaining that the fraudulent-joinder "doctrine allows a district court to dismiss a nondiverse defendant and assume jurisdiction over the case").  Non-diverse defendants are fraudulently joined – and their presence in the lawsuit is thus ignored for purposes of determining the propriety of removal – where no viable cause of action has been stated against them.  *See AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (fraudulent joinder occurs where there is "no colorable ground" for seeking judgment against a nondiverse defendant) (citation omitted).

18. That is precisely the case here with respect to both Mr. Wimbish and the healthcare provider defendants.

19.     *First*, plaintiff's claim for wrongful conversion against Mr. Wimbish and the healthcare provider defendants is destined to fail because plaintiff expressly authorized the healthcare provider defendants to "use, ret[ain] or donat[e]" "all tissues, materials and substances that would normally be removed in the course of the" revision surgery that is the basis of this cause of action, belying any claim that these defendants acted wrongfully.  (Consent to Operation, Treatment Or Other Procedure (attached as Ex. 1).)

20.     "The elements of conversion are (1) the wrongful assumption or exercise of the right of ownership over goods or chattels, (2) that belong to another, (3) inconsistent with, or in denial of the owner's rights."  *Mich. Mut. Ins. Co. v. Smoot*, 129 F. Supp. 2d 912, 918 (E.D. Va. 2000); *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000) ("Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights.").  As multiple courts have recognized, authorization for the use of property belonging to another is fatal to a claim for wrongful conversion.  *See, e.g.*, *United States v. Stockton*, 788 F.2d 210, 216 (4th Cir. 1986) ("It is important to note that the act of dominion or appropriation must be without authorization from the owner of the property.  The notion that the act of dominion or appropriation is contrary to the wishes of the owner, or at least without clear permission from the owner, is inherent in the concept of conversion."); *State of Qatar v. First Am. Bank of Va.*, 880 F. Supp. 463, 468 (E.D. Va. 1995) (no claim for conversion where bank was acting with authorization in transferring funds at issue).

21.     That principle plainly defeats Ms. Cardoza's claim for conversion against the diversity-defeating defendants.  The crux of plaintiff's claim for conversion is that "[t]he Hospital and Spectrum Defendants were complicit in, facilitated, and aided and abetted wrongful

5

conversion of the fractured implant" by "allow[ing] the Defendant Wimbish to take possession of the failed explanted component." (Compl. ¶ 98.) But Ms. Cardoza expressly authorized the "use, retention or donation by the hospital, at its discretion, of all tissues, materials and substances that would normally be removed in the course of the operation, treatment of other procedure." (*See* Consent to Operation, Treatment Or Other Procedure.) As a result, plaintiff expressly authorized the very alleged misconduct that she claims gives rise to her claim for conversion, rendering both Wimbish and the healthcare provider defendants fraudulently joined as to this cause of action.

22. ***Second***, plaintiff's claim for wrongful disclosure of medical information against Mr. Wimbish and the healthcare provider defendants also has no reasonable possibility of success because such a claim is not actionable against a sales representative and the Complaint fails to plead what, if any, confidential medical information the healthcare provider defendants disclosed to others.

23. The tort of unauthorized disclosure of medical information was recognized in 1997 by the Virginia Supreme Court, which held that a "***health care provider***" could be liable in tort for a violation of his or her duty not to disclose information gained during the course of treatment without the patient's authorization. *Fairfax Hosp. By & Through INOVA Health Sys. Hosps., Inc. v. Curtis*, 492 S.E.2d 642, 645 (Va. 1997) (a "***health care provider*** owes a duty to the patient not to disclose" confidential medical information) (emphasis added). In *Shumate v. City of Martinsville*, Virginia courts confirmed that the tort recognized in *Fairfax Hospital* is limited to healthcare providers and that "[t]here is no cause of action for the tortious dissemination of private health information against individuals who are not health care providers." *Shumate v. City of Martinsville*, 90 Va. Cir. 122, 2015 WL 11123352, at *1-2 (2015)

6

(plaintiff could not assert a cause of action for tortious dissemination of private health information against defendant police officers), *aff'd*, No. 151285, 2016 WL 5327477 (Va. Sept. 22, 2016).

24. Plaintiff does not – and cannot – claim that Mr. Wimbish is a healthcare provider. To the contrary, plaintiff herself alleges that Mr. Wimbish is a sales representative for DePuy. (*See* Compl. ¶ 9; *see also id.* ¶ 29 (alleging that the sales representative was acting "within the scope of his employment and/or agency with *the DePuy defendants*, and his actions were in furtherance of DePuy's interests") (emphasis added).)

25. Because Mr. Wimbish is not a healthcare provider, there is no possibility that plaintiff could prevail against Mr. Wimbish on her claim for wrongful disclosure of medical information for this reason as well.

26. Nor is there any reasonable possibility that plaintiff would prevail on this claim against the healthcare defendants. Although plaintiff alleges that her private health information was improperly disclosed, she ***does not plead a single fact to support that conclusion.*** Instead, her claim is wholly conclusory. For example, plaintiff asserts that these defendants "violat[ed] HIPAA and also HITECH laws and regulations, and common law duties, in disclosing the Plaintiff's confidential medical information to the DePuy defendants" and "aided and abetted the . . . use of the Plaintiff's . . . medical records by the DePuy defendants." (Compl. ¶¶ 88-89.) But the Complaint fails to specify *what* "confidential medical information" the healthcare provider defendants supposedly disclosed to the DePuy defendants.

27. As courts within the Fourth Circuit and elsewhere have recognized, "conclusory legal statements" do not suffice to withstand a claim of fraudulent joinder. *Monton v. Am.'s Servicing Co.*, No. 2:11cv678, 2012 WL 3596519, at *5 (E.D. Va. Aug. 20, 2012) ("[A]lthough

[p]laintiffs' [a]mended [c]omplaint repeatedly mentions the Substitute Trustee, it only does so within conclusory legal statements involving alleged breaches of duties purportedly owed to [p]laintiffs.  What is lacking from the [a]mended [c]omplaint, and the original [c]omplaint, are *facts* that would support a cause of action against the Substitute Trustee."); *see also, e.g.*, *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546, at *3 n.3 (E.D. Va. Apr. 18, 2012) (finding fraudulent joinder; "Other than the conclusory assertion that PFC 'work[ed] with' BANA to commit fraud, [p]laintiff does not assert that PFC violated its fiduciary duty of impartiality when taking these actions."); *Block v. Toyota Motor Corp.*, 665 F.3d 944, 950 (8th Cir. 2011) (affirming finding that non-diverse automobile dealer was fraudulently joined; the plaintiff's "numerous generalized allegations of knowledge" of a defect were "conclusory" and insufficient to show that the defendant had "actual knowledge" of a problem, as required under Minnesota law); *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 U.S. Dist. LEXIS 79199, at *15 (S.D. Ohio June 17, 2016) ("The 'lack of factual allegations regarding [the non-diverse party] provides no more than labels and conclusions insufficient to sustain viability of the legal claims.'") (quoting *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20275, 2012 U.S. Dist. LEXIS 74453, at *14 (N.D. Ohio May 30, 2012)).  "Instead, the [c]ourt credits only the *specific* factual allegations of the complaint."  *Murray Energy*, 2016 U.S. Dist. LEXIS 79199, at *13 (emphasis added).  Because there are no "specific factual allegations" with regard to the healthcare provider defendants' purported disclosure of plaintiff's confidential medical information, there is no possibility that plaintiff could prevail against them on this cause of action.

28.	For all of these reasons, the non-diverse defendants are fraudulently joined.

### C.     In The Alternative, Plaintiff's Claims Against The Removing Defendants Are Misjoined With Her Claims Against The Healthcare Provider Defendants.

29.     Fraudulent misjoinder is "an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *3 (N.D. W. Va. Sept. 3, 2009) (citation omitted).  "[J]ust as th[e] [c]ourt may find diversity jurisdiction exists where a plaintiff has no possible cause of action against a nondiverse defendant, th[e] [c]ourt may also find diversity jurisdiction where diversity is destroyed only through misjoinder of parties." *Asher v. Minn. Mining & Mfg. Co.*, No. Civ.A. 04CV522KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005).  Fraudulent misjoinder arises where "the factual commonality among the plaintiffs' claims against the different classes of defendants [is] not sufficient to satisfy Rule 20." *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008); *see also Asher*, 2005 WL 1593941, at *8 ("The only common factual allegation in each [p]laintiffs' claim is the allegation that each used the same kind of product or products in the same kind of work. . . . [T]he [c]ourt finds that the [p]laintiffs' claims are clearly misjoined under Kentucky state law and that there is not arguably a reasonable basis for finding that the [p]laintiffs' claims were properly joined."); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004) (claims are fraudulently misjoined "where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum"); *Asher*, 2005 WL 1593941, at *7 ("Pursuant to the fraudulent misjoinder doctrine . . . the [c]ourt *must* first determine whether the [p]laintiffs' claims were misjoined before it can determine whether it has subject matter jurisdiction.").  Upon a finding of fraudulent misjoinder, courts should sever and remand claims against the resident defendants "so as to preserve the removing [d]efendants' right to removal." *Sutton*, 251 F.R.D. at 505.

30. Numerous courts have applied the doctrine of fraudulent misjoinder where a plaintiff attempts to join factually dissimilar product-liability claims against a product manufacturer with medical-malpractice claims against a healthcare provider. *See, e.g.*, *id.* (finding that federal jurisdiction existed with regard to manufacturer of medical device but remanding claims against non-diverse physician/hospital defendants); *Greene*, 344 F. Supp. 2d at 683-85 (physician who prescribed drug was misjoined as a non-diverse defendant in product-liability suit against the manufacturer of the drug); *Hughes*, 2009 WL 2877424, at *6 (finding that there was fraudulent misjoinder where the claims against some defendants involved "product liability legal theories," whereas the claims against another defendant involved "medical negligence"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07-1487 (DWF/AJB), 2007 U.S. Dist. LEXIS 64942, at *8 (D. Minn. Aug. 30, 2007) (denying remand and finding that a malpractice claim against a physician was fraudulently misjoined with product-liability claims against the device manufacturer); *In re Rezulin Prods. Liab. Litig.*, No. MDL 1348, 00 Civ. 2843(LAK), 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003) (denying plaintiff's motion to remand product-liability claims against manufacturer of prescription drug, while severing and remanding malpractice claim against doctor).

31. In *Sutton*, for example, the plaintiffs asserted various product-liability claims against diverse defendants related to an allegedly defective medical patch developed and manufactured by those defendants. 251 F.R.D. at 502. The plaintiffs also joined several non-diverse healthcare provider defendants, including Mr. Sutton's physician and the hospital in which he received his medical patch implant. *Id.* The product-liability defendants removed the case to federal court, arguing that the non-diverse healthcare provider defendants were

10

fraudulently misjoined. *Id.* The defendants also noted that a multidistrict litigation had been established with respect to the allegedly defective patch. *Id.*

32. The *Sutton* court concluded that the plaintiffs' claims against the healthcare provider defendants were fraudulently misjoined, noting that the defendants' "legal and factual position [was] compelling, especially in the context of MultiDistrict Litigation." *Id.* at 504. It then explained that joinder of the non-diverse defendants in the action was "improper" because "[p]laintiffs' claims against the California Defendants are not based on the allegedly negligent testing and manufacture of the Patch and cannot be under California law." *Id.* at 505. Accordingly, the *Sutton* court severed and remanded the plaintiffs' claims against the healthcare provider defendants, "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Id.*

33. Similarly, in *Guidant*, the plaintiff sued his doctor for medical negligence, alleging that the doctor implanted a defective defibrillator and negligently removed and replaced it. 2007 U.S. Dist. LEXIS 64942, at *3-4. At the same time, the plaintiff also brought product-liability claims against Guidant, the manufacturer of the defibrillator. *Id*. at *4. Guidant removed the case, and the plaintiff moved to remand. In denying the remand motion, the court held that joinder of the claims was improper because they did "not both involve common questions of law or fact" and the plaintiff did not assert liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." *Id.* at *7-8 (citation omitted). According to the court, the medical-negligence claim against the plaintiff's doctor would require "evidence on [the plaintiff's] care, treatment, and services provided" by the doctor. *Id.* at *7. By contrast, the product-liability claims against the manufacturer were "based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged

11

misrepresentation of the health risks associated with certain cardiac medical devices," which "would require evidence on the development, manufacture, and testing of [the product] along with evidence of [the manufacturer's] knowledge, warnings, and representations regarding" the allegedly defective product. *Id.* at \*7-8. The court thus severed the action against the doctor, "preserv[ing the manufacturer's] right to removal in the remaining action." *Id.* at \*10.

34. Here, plaintiff's claims for conversion and wrongful disclosure are legally and factually distinct from the product-liability claims against the removing defendants. Specifically, the claims against the healthcare provider defendants rest on the allegation that those defendants "violat[ed] HIPAA and also HITECH laws and regulations, and common law duties, in disclosing the Plaintiff's confidential medical information to the DePuy defendants" and that they inappropriately "allowed the Defendant Wimbish to take possession of the failed explanted component." (Compl. ¶¶ 88, 98.) By contrast, the claims asserted against the diverse defendants sound in product liability and center on the purportedly defective nature of plaintiff's hip implant. (*Id.* ¶¶ 51, 56, 61, 66.)[1] In other words, just as in *Guidant*, the claims against the healthcare provider defendants would require "evidence on [plaintiff's] care, treatment, and services provided" by those defendants, whereas the claims asserted against the removing defendants would "require evidence on the development, manufacture, and testing" of the products. 2007 U.S. Dist. LEXIS 64942, at \*7.

---

[1] Although the counts for wrongful disclosure and conversion are technically asserted against "ALL" defendants except CeramTec (Compl. ¶¶ 84-99), such claims are patently frivolous. As already discussed in text, plaintiff authorized the transfer of her explanted components, foreclosing any possibility of success with respect to a claim for conversion against anyone. In addition, as discussed in connection with plaintiff's wrongful disclosure claim against Mr. Wimbish, the narrow tort relied upon by plaintiff in her Complaint only covers healthcare providers – which the manufacturing defendants are certainly not. In any event, plaintiff does not explain how the manufacturers would have come to possess "confidential healthcare information" about plaintiff and whom they supposedly provided it to.

35. In short, just as in *Sutton* and *Guidant*, the Court should retain jurisdiction over the claims against the removing defendants.[2]

### D. Amount In Controversy

36. Plaintiff in this action claims that she "has been required to incur medical and related expense in the past, and will require even further such expenses in the future; has suffered in the past, and continues to suffer, and will suffer in the future severe emotional and mental anguish and distress with physical inconvenience and other physical ramifications," and that she "suffered specific direct injury to her person; was caused other serious and permanent injuries about her person internally and externally; was caused excruciating pain and mental anguish; was maimed and disabled; and, was rendered less capable of performing her normal daily tasks all due to her damage." (Compl. ¶ 101.)

37. Plaintiff demands two million five hundred thousand dollars ($2,500,000) in compensatory damages and three hundred fifty thousand dollars ($350,000) in punitive damages. (*See id.* "Wherefore" paragraph.)

38. Thus, plaintiff's Complaint facially satisfies the $75,000 jurisdictional threshold.

---

[2] Even if the two sets of claims were not misjoined, the Court would still have the discretion to sever the claims against the healthcare provider defendants under Federal Rule of Civil Procedure 21 and assert jurisdiction over the product-liability claims against the removing defendants. *See Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 706 (D. Md. 2015) ("While Counts III and IV against the Maryland Healthcare Defendants may involve the same physical object that is the source of the products liability claims against the Ethicon Defendants, the medical negligence claims against the Maryland Healthcare Defendants involve legal standards and factual inquiries distinctly different from the products liability claims against the Ethicon Defendants."). This approach has been taken in a number of cases, particularly where – as here – judicial efficiency favors federal jurisdiction over a portion of the case. *See, e.g.*, *DeGidio v. Centocor, Inc*., No. 3:09CV721, 2009 WL 1867676, at *3-5 (N.D. Ohio July 8, 2009) (finding that the non-diverse healthcare providers were not "necessary parties" to the claims against the drug manufacturers and therefore severing those claims to "perfect diversity jurisdiction").

## II. THE REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

39. Johnson & Johnson Services, Inc. and DePuy Synthes Sales, Inc. were served with plaintiff's Complaint on December 27, 2018; MDBS was served on December 28, 2018. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

40. The Circuit Court for the City of Danville is located within the Western District of Virginia. *See* 28 U.S.C. § 1441(a).

41. The removing defendants are not citizens of the Commonwealth of Virginia, the State where this action was brought. *See* 28 U.S.C. § 1441(b).

42. It is well settled that co-defendants who are fraudulently joined need not join in the removal. *See, e.g.*, *Borsuk v. Mass. Mut. Life Ins. Co.*, No C 03-630 VRW, 2003 U.S. Dist. LEXIS 25259, at *7-8 (N.D. Cal. Sept. 4, 2003). As set forth above, DRMC, Spectrum and Mr. Wimbish are fraudulently joined. *See* Section I.A, above. Therefore, they need not consent to removal.

43. In addition, co-defendants who have not been served at the time of removal need not join or consent to the removal. *See, e.g.*, *Wolfe v. Green*, 660 F. Supp. 2d 738, 744 (S.D. W. Va. 2009). CeramTec has not been served in this action. Therefore, CeramTec need not consent to removal.

44. No previous application has been made for the relief requested herein.

45. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon the removing defendants, which papers include the Complaint, are attached collectively as Exhibit 2. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiff and a copy is being filed with the Clerk of the Circuit Court for the City of Danville.

WHEREFORE, MDBS, Johnson & Johnson Services, Inc., and DePuy Synthes Sales, Inc. respectfully remove this action from the Circuit Court for the City of Danville, in the Commonwealth of Virginia, bearing Number CL18-850, to this Court.

    Respectfully submitted,

    MEDICAL DEVICE BUSINESS SERVICES, INC.
    JOHNSON & JOHNSON SERVICES, INC.
    DEPUY SYNTHES SALES, INC.


    By:    /s/William F. Devine
        Of Counsel


William F. Devine (VSB No. 26632)
Scott C. Miller (VSB No. 77088)
WILLIAMS MULLEN, A PROFESSIONAL CORPORATION
wdevine@williamsmullen.com
smiller@williamsmullen.com
999 Waterside Drive, Suite 1700
Norfolk, Virginia 23510
Tel: (757) 629-0618
Fax: (757) 629-0660

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2019, a true copy of the foregoing was served by electronic mail and U.S. Mail, postage prepaid, upon:

Robert W. Mann, Esquire
Young Haskins, Mann, Gregory McGarry & Wall, P.C.
P.O. Box 72
Martinsville, VA  24114-0072
Telephone:  (276) 638-2367
Facsimile:  (276) 638-1214
RWMann@comcast.net

John T. Jessee, Esquire
Sarah C. Jessee, Esquire
LeClairRyan, PLLC
1800 Wells Fargo, Drawer 1200
Roanoke, VA  24006
Telephone: (540) 510-3000
Facsimile:  (540) 510-3050
John.jessee@leclairryan.com
Sarah.jessee@leclairryan.com

            /s/William F. Devine
            Counsel for Defendants