CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 08 2019
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SUSAN O. CARDOZA, | |
| Plaintiff, | |
| v. | Civil Action No. 4:19-cv-3 |
| MEDICAL DEVICE BUSINESS SERVICES, INC., *et al.*, | By: Elizabeth K. Dillon<br>United States District Judge |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Susan O. Cardoza is a Virginia resident who alleges that the liner of her hip implant, which was implanted during a total hip replacement, fractured shortly after being implanted, requiring her to have emergent revision surgery. Because some of the fractured pieces could not be removed—in either her first revision surgery or a second revision surgery—she continues to have shards of the liner in her body.

Cardoza filed suit in the Circuit Court for the City of Danville. Her complaint names five out-of-state defendants, all of whom have some relationship to the development, manufacture, or distribution of the hip implant and/or the liner, and it also names three Virginia residents as defendants. For purposes of this opinion, the court groups the out-of-state defendants into two groups. The first is the DePuy Defendants,[1] who filed the notice of removal, removing the case to this court and invoking the court's diversity jurisdiction. The second group is the CeramTec

---

[1] The three DePuy Defendants are Medical Device Business Services, Inc. (formerly DePuy Orthopedics Inc.), Johnson & Johnson Services, Inc., and DePuy Synthes Sales, Inc.

1

Defendants.[2]  The first six counts of Cardoza's complaint are breach of warranty and failure to warn claims brought against one or more of the out-of-state defendants.

In addition to those product liability claims, Cardoza's complaint also asserts three additional state-law claims: a "spoliation" claim; a claim for wrongful disclosure of medical information; and conversion.  Those claims arise out of her allegation that, despite her surgeon's pre-surgery assurances that he would give her the parts of the implant that were removed, those pieces were not provided to her, but were instead given to the DePuy Defendants, where they were "examined, inspected, and tested." (Compl. ¶ 34.)  Although the parts have since been returned to her, she alleges that their condition and the lack of any information about the chain of custody makes it "virtually impossible for [her] to determine with reasonable certainty the root cause of her injuries and damages." (*Id.* ¶ 6.)

The "spoliation" claim appears to be asserted only against the DePuy Defendants.  The other two state-law claims are asserted against the DePuy Defendants and the three Virginia residents. (*Id.* ¶¶ 84–99.)  The Virginia residents are: (1) the Danville Regional Medical Center (the Hospital), which is the entity that operates the Danville, Virginia hospital where Cardoza's hip implant was removed in her first revision surgery; (2) Spectrum Medical, Inc. (Spectrum), a healthcare provider whose services include orthopedic surgery and who is the employer or principal of Cardoza's surgeon for the revision surgery; and (3) Matt Wimbish, a manufacturer's representative for the DePuy Defendants who was present in the operating room during that surgery and who, Cardoza alleges, took portions of the implant after their removal and provided them to the DePuy Defendants, all without Cardoza's permission.

---

[2] The two CeramTec defendants are CeramTec GmbH and CeramTec North American Corp.

Pending before the court are two motions: (1) Cardoza's motion to remand; and (2) the DePuy Defendants' motion to stay, which asks the court to stay the case and delay consideration of the motion to remand pending a decision by the Judicial Panel on Multidistrict Litigation (JPML) on whether these cases will be transferred to a pending multi-district litigation action, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244 (the MDL). The motion to remand and motion to stay are fully briefed and were argued before the court on April 10, 2019.

For the reasons set forth herein, the court will grant in part the motion to remand, but will deny it insofar as it requests an award of attorneys' fees and costs and will deny as moot the motion to stay.[3]

## I. BACKGROUND

### A. Factual Background[4]

In broad strokes and as relevant to the issues currently before the court, Cardoza alleges that there was a manufacturing defect in the ceramic liner that is part of the hip replacement system implanted in her in December 2016. She began having pain and problems with the hip about three months later, and physical examination and x-ray imaging led the surgeon to conclude that the product had malfunctioned and that she needed emergent revision surgery. She underwent that surgery on March 10, 2017. Prior to the surgery, she specifically requested that her surgeon give her the parts that were removed from her body, and he agreed that the removed parts would be preserved and given to her.

---

[3] There are two other pending motions in the case: (1) a motion to dismiss, filed by Spectrum (Dkt. No. 14); and (2) the DePuy Defendants' motion for extension of time to file their answer (Dkt. No. 30). In light of the court's remand of this case, the court will simply leave both motions for the state court to resolve.

[4] The facts set forth herein are taken from Cardoza's complaint, which was attached to the Notice of Removal. (Dkt. No. 1-3.)

During the surgery, the surgeon found that the ceramic liner had "fractured in multiple planes" and sharp fragment shards had been deposited into her body. The surgeon was unable to remove all of them, despite his best efforts. During the surgery, while Cardoza "was under general anesthesia," Wimbish took possession of the shattered pieces of the ceramic liner which had been removed from Cardoza's body. He did so while acting within the scope of his employment with DePuy or as an agent of DePuy, and in furtherance of their interests.

Although the chain of custody is "unknown," those fragments ultimately were "examined, inspected and tested" in Warsaw, Indiana, and in Leeds, England. The month following the surgery, Cardoza's attorneys began trying to obtain all of the removed pieces. Their efforts included sending preservation letters to the DePuy Defendants and to the Hospital requesting the parts and requesting their preservation as evidence. The Hospital, which had retained physical possession of the "cracked femoral head," refused to provide it to Cardoza without a "subpoena." (Compl. ¶¶ 36–37.) After repeated requests from Cardoza's counsel, the DePuy Defendants delivered to Cardoza's counsel "what purported to be the shattered components" of the "explanted prosthesis." (Compl. ¶ 41.) They were in an "unsecured Ziploc bag with insufficient and confusing identifying information." (*Id.*) Cardoza alleges that under the circumstances and because of defendants' conduct, it is "virtually impossible" for her to determine the root cause of her injuries and damage. (Compl. ¶ 42.)

As a factual matter, the DePuy Defendants rely heavily on a consent form signed by Cardoza to defeat Cardoza's claims against the in-state defendants. The form, which was attached to the Notice of Removal, was signed by Cardoza and her surgeon three days prior to her revision surgery and is titled a "Consent to Operation, Treatment or Other Procedure." (Notice of Removal Ex. 1, Dkt. No. 1–1.) That document states that Cardoza "authorize[s] and

4

consent[s] to the disposal, use, retention or donation by the hospital, at its discretion, of all . . . materials and substances that would normally be removed in the course of the operation . . . ." (*Id.*)

The court requested supplemental briefing from the parties as to whether the court could properly consider that document. That issue, as well as the factual significance of the document, is discussed in context below.

## B. Procedural History

### 1. Removal

Cardoza filed suit in the Circuit Court for the City of Danville, and the DePuy Defendants timely removed the case to this court, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332. As noted, Counts I through VI name either DePuy Defendants or CeramTec Defendants. In addition to naming those companies—all of which have a connection to the hip implant system or its components—Cardoza also has named as defendants the three Virginia residents described above: the Hospital, Spectrum, and Wimbish. Cardoza argues that the existence of these Virginia defendants in the suit destroys diversity jurisdiction and requires remand. She also makes a threshold argument that remand is required because of the removing defendants' failure to comply with technical aspects of the removal statute.

The DePuy Defendants counter that the non-diverse defendants are fraudulently joined because Cardoza has no possibility of succeeding on the two counts in which they are named: Count VIII, wrongful disclosure of medical information, and Count IX, conversion.[5] They also

---

[5] It is not clear whether Count VII, titled "spoliation," also intended to name Wimbish, a Virginia resident, as a defendant. Regardless, spoliation is not recognized as a separate tort in Virginia. *Bass v. E.I. Dupont De Nemours & Co.*, 28 F. App'x 201, 206 (4th Cir. 2002) (per curiam) ("The district court correctly held that Virginia does not recognize a tort based on spoliation of evidence."). At the hearing, Cardoza's counsel conceded this point.

argue, in the alternative, that even if the non-diverse defendants are not fraudulently joined, Counts VIII and IX are "fraudulently misjoined" under Rule 20. Accordingly, they contend that "plaintiff's claims against the non-diverse defendants cannot defeat diversity jurisdiction." (Defs.' Combined Mem. 17, Dkt. No. 19.) Defendants ask that the court stay the proceedings, or in the alternative, deny the motion to remand. (*Id.* at 20.) They also suggest that the court could sever the claims against the non-diverse defendants and assert jurisdiction over the products liability claims.

2. **The MDL**

After this case was filed, the DePuy Defendants designated this case as a tag-along action in the MDL. Although the JPML initially declined to include the case in the MDL (Dkt. Nos. 6, 8), it subsequently reversed course. It later issued a conditional transfer order (CTO) (MDL No. 2244, Dkt. No. 2064), which plaintiff has opposed and moved to vacate. (MDL No. 2244, Dkt. Nos. 2975, 2099.) According to Cardoza, the MDL matter was fully briefed as of April 9, 2019. The JPML has stated that the issued will be heard, without oral argument, at the Panel's May 30, 2019 hearing. (MDL No. 2244, Dkt. No. 2126.) At the hearing in this court, counsel for the DePuy Defendants represented that it expected a ruling from the Panel a week or two after the hearing.

As the parties agree, the CTO does not affect this court's ability or authority to rule on the remand motion. *See* J.P.M.L. Rule of Procedure 2.1(d) ("The pendency of a conditional transfer order . . . before the Panel . . . does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.") If and when a final transfer order is issued, however, this court will have no authority to address the motions to remand. The DePuy Defendants' motion to stay asks the court to stay a

6

decision on the pending motion to remand until after a final transfer order is issued. Especially because the parties seem to believe it is likely that this case will get transferred absent any action by this court, the motion to stay effectively requests that this court allow the MDL court to rule on the motion for remand.

II. DISCUSSION

**A. Motion to Stay**

Defendants urge the court to apply the "general rule" that motions to stay in this circumstance are generally granted and simply stay the case. (Defs.' Combined Mem. 4, Dkt. No. 19 (collecting cases).) But this court concludes that it should first give "preliminary scrutiny to the merits of the motion to remand." *Walker v. New England Compounding Pharmacy Inc.*, No. 7:12-cv-564, 2013 WL 1871343, at *3 (W.D. Va. May 3, 2013) (quoting *Meyers v. Bayer A.G.*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001)). If that preliminary assessment suggests improper removal, the court should complete its analysis and remand the case, if appropriate. *Id.* at *2 (citation omitted). If, however, the jurisdictional question appears "factually or legally difficult" and similar jurisdictional questions are likely to be raised in other cases in the MDL, then a stay may well be preferable, but the court nonetheless looks to the factors underlying a motion to stay. *See id.*

The court has given preliminary consideration to the jurisdictional issues, and its preliminary assessment suggests that removal was improper. Further, the question of whether diversity jurisdiction exists here is neither factually or legally complicated and can be addressed with relative ease and swiftness by this court. Accordingly, the court turns to the merits of the remand motion.

**B. Motion to Remand**

    **1. General standards**

The Fourth Circuit has repeatedly noted that federal courts must "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Furthermore, "[t]he burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Id.* Thus, in deciding whether to remand, this court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

    **2. Procedural violations of removal statute**

Cardoza's threshold argument is that remand is required because of two alleged technical violations of the removal statute, although she does not challenge the timeliness of the removal. First, she faults the removing defendants for failing to attach copies of all process and pleadings in the case, as required by 28 U.S.C. § 1446(a). That provision states that the notice of removal shall must be filed "together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). In particular, the Notice of Removal did not contain process served on Spectrum, nor did it contain Spectrum's Motion to Dismiss.[6] Second, she contends that notice was not given to Spectrum immediately upon removal, in contravention of the statute. *See id.* § 1446(d) (directing that "promptly" after filing a notice of removal, the removing party "shall give written notice thereof to all adverse parties").

---

[6] Cardoza impliedly suggests in her complaint that perhaps these specific documents were omitted for some dilatory purpose and, in particular, that their omission made it appear "as if Spectrum did not exist." (Pl.'s Mem. Supp. Mot. Remand 13, Dkt. No. 18.). As the DePuy Defendants note in their response, however, the Notice of Removal and other documents attached to it repeatedly refer to Spectrum. (*See generally* Notice of Removal, Dkt. No. 1.) The court does not find any attempt to conceal the existence of Spectrum as a defendant or its participation in the suit.

Cardoza cites to several federal cases that remanded where a defendant failed to include copies of summonses or other required documents required to be filed with the notice of removal. (Pl.'s Mem. Supp. Mot. Remand 13, Dkt. No. 18.) These include decisions from district courts in North Dakota, Oregon, Massachusetts, and Colorado. (*Id.*) Cardoza recognizes, though, that there is a split of authority on the issue of whether a district court is required to remand upon finding similar technical defects. *See, e.g.*, *Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272–73 (10th Cir. 2011) (discussing split and collecting authority). Neither party has cited to any Fourth Circuit cases addressing the split or directly addressing the issue. Nonetheless, there are several decisions from district courts within the Fourth Circuit holding that such *de minimis* violations of the procedural requirements for removal do not require remand. *McWilliams v. Broderick*, No. 1:11-cv-519, 2011 WL 2669969, at *3 (E.D. Va. July 7, 2011) (denying motion to remand because failure to include state court summons was inadvertent and trivial, did not unduly burden the court, and did not prejudice plaintiff); *Riggs v. Fling Irrigation, Inc.*, 535 F. Supp. 2d 572, 578–79 (W.D.N.C. 2008) (failure to attach state court documents was a curable procedural defect that caused no prejudice); *see also Rocha v. Brown & Gould, LLP*, 61 F. Supp. 3d 111, 114 (D.D.C. 2014) (describing the failure to attach all of the state court records as "de minimis").

The court finds the reasoning of the courts in *McWilliams* and *Riggs* to be persuasive. In the absence of any Fourth Circuit authority to the contrary, then, the court does not believe that either this or the alleged failure to serve Spectrum, discussed below, render the removal defective so as to require remand.

Second, plaintiff claims that the notice of removal was defective because DePuy failed to give notice to Spectrum, which she contends contravenes Section 1446(d)s requirement that

"promptly after the filing of such notice of removal . . . Defendant . . . shall give written notice thereof to adverse parties." The DePuy Defendants have represented that they gave notice to Spectrum within days of the removal; it is not clear, though, if it was formal written notice.

Regardless, the court concludes that this, too, is a *de minimis* violation and the type of violation that can be cured. *See, e.g.*, *Packrite, LLC v. Graphic Packaging Int'l, Inc.*, No. 1:17CV1019, 2018 WL 4112827, at *2 (M.D.N.C. Aug. 28, 2018) ("[R]emand on the basis that [a defendant] failed to comply with the notice requirements of 28 U.S.C. § 1446(d) would be improper."). Moreover, the defect has been cured here. Spectrum knew about the removal shortly after it occurred, as evidenced by its counsel's notice of appearance and its refiling of its demurrer as a motion to dismiss in this court.

Cardoza argues that even if not required, the court should exercise discretion to remand based on these errors. The court declines to do so and instead finds that these violations were minimal and resulted in no prejudice to any party. The court finds that remand here is not appropriate with regard to these procedural deficiencies. The *Rocha* court found a similar lack of prejudice, noting that, by the time the motion to remand was filed, the state court had already provided the entire state court record. The same is true here. The DePuy Defendants filed their Notice of Removal on January 28, 2019, attaching over one hundred pages of documents from the state court. The entire state court record was obtained and docketed in this case on February 8, 2019, about two weeks before Cardoza filed her motion to remand on February 22, 2019.

One last issue regarding compliance with the removal statute warrants discussion. Specifically, although Cardoza does not raise the issue, the court notes that removal premised on diversity jurisdiction is permitted only if "all defendants who have been properly joined *and served* . . . join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A) (emphasis

added). In their Notice of Removal, the DePuy Defendants correctly note that they did not need to obtain the consent of the CeramTec parties, because those parties had not yet been served. Cardoza does not argue to the contrary. With regard to the in-state defendants, the DePuy Defendants claim that their consent is not required because they are fraudulently joined. If they were fraudulently joined, this would be true. Because the court concludes that they were not fraudulently joined, however, DePuy was required to obtain their consent to removal, which it has not done.[7]

In short, and consistent with the above authority, the court does not find that remand is required or warranted due to the minor procedural violations of the removal statute. It will not remand on that basis.

### 3. Fraudulent joinder

As noted, the DePuy Defendants argue that the non-diverse defendants are fraudulently joined and thus that remand is improper. Cardoza disagrees.

Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction may nonetheless be proper if the non-diverse defendants are fraudulently joined. "The doctrine of fraudulent joinder permits a federal court to disregard, for jurisdictional purposes, the citizenship of non-diverse defendants." *McFadden v. Fed. Nat'l Mortg. Ass'n*, 525 F. App'x 223, 227 (4th Cir. 2013) (internal citation and quotation marks omitted). In seeking removal, the defendant "alleging fraudulent joinder bears a *heavy burden*." *Hartley*, 187 F.3d at 424 (emphasis added). In fact, the fraudulent joinder standard "is even more favorable to the

---

[7] A challenge based on a lack of unanimity is waivable and is not jurisdictional. *Payne ex rel. Estate of Calzada v. Brake,* 439 F.3d 198, 203 (4th Cir. 2006) (holding that non-compliance with the rule of unanimity is a waivable "error in the removal process," rather than a defect in subject-matter jurisdiction). Plaintiff has not objected on this basis, and no other defendant has indicated any position on the issue. Thus, the court does not remand based on any lack of unanimity.

plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999).

The parties appear to agree on the relevant standard for determining fraudulent joinder. Specifically, a non-diverse defendant is fraudulently joined where "there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse party." *Id.* (internal citation and quotation marks omitted); *see also Systems2 Comm'cs, Inc. v. Comcast Corp.*, No. 7:10-cv-00501, 2011 WL 335254, at *2 (W.D. Va. Jan. 27, 2011). Where there is a "slight possibility of a right to relief" or the plaintiff has a "glimmer of hope," the matter should be remanded. *Id.* (quoting *Hartley*, 187 F.3d 425–26).

Cardoza relies heavily on the decision in *Systems2*, which she describes as "practically indistinguishable." She quotes at length to *System2*'s description of the standard defendant must meet to show fraudulent joinder and to its proclamation that the federal pleading requirements do not inform fraudulent joinder analysis and instead that state pleading requirements are applicable. *Id.* at *2–*3.

Applying those standards here, the court concludes that, at least as to one claim against one of the non-diverse defendants, the conversion claim, defendants cannot show that there is no possibility of establishing the cause of action. Conversion requires the "[w]rongful exercise or assumption of authority over another's goods, depriving him of their possession. Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights or inconsistent therewith, may be treated as a conversion." *Condominium Servs., Inc. v First Owners' Ass'n*, 709 S.E.2d 163, 171 (Va. 2011) (citations omitted).

The allegations in the complaint, if proved true, include that either the Hospital or Spectrum, in addition to Wimbish, assumed authority over the extracted implant parts, which

12

were Cardoza's property. She requested them back *before* her surgery and immediately following it, and her surgeon assured her she could have them. She also alleges that she continued to try to recover the parts from both the Hospital and the DePuy Defendants and that the Hospital refused to provide them, and DePuy returned them only after lengthy delays and its own testing. In short, she alleges that the retention of her property was contrary to her express wishes and promises made to her by her surgeon. If, as she alleges, she did not consent to any defendant's possession and retention of the parts, then there is at least a "possibility" of recovering against a non-diverse defendant on her conversion claim.

The DePuy Defendants make several arguments in response. First, they rely—as a factual matter—on the consent form signed by Cardoza prior to her surgery. They assert that because she consented in writing to the Hospital doing what it pleased with the explanted parts, there was nothing "wrongful" about either the Hospital's possession of them or its release of them to Wimbish and the DePuy Defendants. *See, e.g., United States v. Stockton*, 788 F. 2d 210, 216 (4th Cir. 1986) ("It is important to note that the act of dominion or appropriation must be without authorization from the owner of the property. The notion that the act of dominion or appropriation is contrary to the wishes of the owner, or at least without clear permission from the owner, is inherent in the concept of conversion.").

Cardoza suggests, though, that the court should not consider the consent form and that, even if the court does consider it, "factual questions abound regarding the timing, authenticity, and meaning" of that form. (Pl.'s Mem. Supp. Mot. Remand 18.) In the event the court does consider it, moreover, she provides an affidavit in an attempt to clarify paragraphs in the complaint and to explain her signature on that document. (Cardoza Aff., Dkt. No. 18-1.) In her affidavit, she claims that she had a conversation with her surgeon three days *after* signing that

13

form, but before the surgery, during which she informed him that she wanted the parts, and he agreed to provide them.

The court turns first to the issue addressed in the supplemental briefs: whether the court may consider the consent form in ruling on the jurisdictional issues. In their supplemental brief, the DePuy Defendants cite to several Fourth Circuit decisions that seem to support this court's considering the consent form:

> [I]n determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling & Testing Ctrs.* [*v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)] (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir.1964)).

*Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999). Both *Aids Counseling* and *Mayes* used permissive language in addressing the issue, *i.e.*, that a court *may* consider matters outside the pleadings, but neither indicates when it is appropriate to do so or if it is always appropriate to do so. Importantly, moreover, both cases involved an attempt to add a non-diverse defendant *after* removal. In that context, the fraudulent joinder doctrine was "yet another element" of the district court's "flexible, broad, discretionary approach" to resolving a post-removal question of joinder under 28 U.S.C. § 1447(e). *Mayes*, 198 F.3d at 462.

The difference in context has led at least one district court to conclude that only the pleadings should be considered in determining whether there was fraudulent joinder where a plaintiff named a nondiverse defendant in its initial complaint in state court. *Allard v. Laroya*, 163 F. Supp. 3d 309, 312 (E.D. Va. 2016); *see also Kinley v. Husqvarna Consumer Outdoor Prod., N.A., Inc.*, No. 5:18-CV-01845-CMC, 2018 WL 4403391, at *1 n.1 (D.S.C. Sept. 17,

14

2018) (seeming to agree with *Allard* but noting that the consideration of the "submissions beyond the complaint . . . would not lead to a different result" in the case before it).

The court tends to agree with the rationale of *Allard* on this issue. In particular, the context of *AIDS Counseling* and *Mayes* and the standard those courts were obligated to apply in that context is different than the jurisdictional inquiry here, which is more stringent and more favorable toward remand. Thus, the court believes it likely that it cannot consider documents beyond the pleadings. Based on the complaint's allegations alone, Cardoza has clearly stated a claim for conversion. But it need not definitively decide whether reliance on other documents is appropriate here because even if the court were to consider the consent form and "the entire record," as defendants urge, the court would reach the same result.

If the court reviewed the consent form in evaluating the issue of consent, then the court believes it also would have an obligation to consider evidence such as Cardoza's affidavit, which calls into question the continuing validity of the consent form. As noted, she avers that, days after signing the form, she and her surgeon expressly agreed—albeit orally—that she could have back all the removed parts.

The DePuy Defendants respond that, even if that oral agreement with her surgeon existed as stated in Cardoza's affidavit, it could modify the prior written agreement only if there was a mutual intent to modify the written agreement. (Dkt. No. 19 at 13 (citing *Stanley's Cafeteria, Inc. v. Abramson*, 306 S.E. 2d 870, 873 (Va. 1983)). They then assert that because Cardoza admits she did not even know that the form contained a provision allowing the retention of her parts by the Hospital, she cannot have had the requisite intent to modify the written agreement. Put differently, she did not know the oral agreement was modifying the agreement. The court is not persuaded by this contractual argument. Crediting plaintiff's allegations, she and her

15

surgeon had a mutual intent to modify a term of the written agreement and so would satisfy the standard set forth in *Stanley's Cafeteria* because they clearly agreed to a contrary term from the written agreement. At the very least, the court cannot say on the current record that defendants have shown Cardoza has "no possibility" of succeeding on her claim.[8]

### 4. Fraudulent misjoinder

Defendants' alternative argument is that, even if the non-diverse defendants were not fraudulently joined, the claims against them have been improperly joined with the claims against the diverse defendants. This is a theory often referred to as "fraudulent misjoinder."

As an initial matter—and as the DePuy Defendants recognize—the Fourth Circuit has not expressly adopted the doctrine of "fraudulent misjoinder." But it also has not rejected it. *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 2d 639, 642, 645–46 (S.D.W. Va. 2017). And district courts both within and outside the Fourth Circuit have applied the doctrine and found fraudulent misjoinder where the claims against some defendants involved "product liability legal theories," and the claims against a non-diverse defendant involved "medical negligence." *E.g.*, *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D.W. Va. Sept. 3, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008).

An illustrative case where a court severed products liability claims from claims against healthcare providers that involved the same product is *Sullivan v. Calvert Mem. Hosp.*, 117 F. Supp. 3d 702 (D. Md. 2015). There, the plaintiff filed suit alleging injuries arising from the implant of a medical device. *Id.* at 703. She sued out-of-state manufacturers asserting products liability claims and sued her non-diverse healthcare providers for medical malpractice. The

---

[8] In light of the court's conclusion, it does not address Cardoza's alternative assertion that the contract was an impermissible contract of adhesion. The court also finds it unnecessary to consider the parties' arguments as to the wrongful disclosure claim.

medical malpractice claims alleged that her healthcare providers were negligent both because they "install[ed] and unsafe, dangerous, and defective . . . product" and because they failed to fully remove the catheter inserted for use during surgery. After removal, the court refused to remand the case despite the existence of the non-diverse healthcare providers. Instead—and although the claims involved "the same physical object"—the court concluded that the claims against the two sets of defendants should be severed because they involved "distinctly different" "legal standards and factual inquiries." *Id.* at 706.

Assuming, without deciding, that fraudulent misjoinder is an available theory on which to seek remand, the court concludes that defendant has not shown such misjoinder here. The claims against the non-diverse defendants in this particular case are different than in a typical case involving medical malpractice based on an implant of a defective product. Here, the claims against the non-diverse defendants involve different legal theories, to be sure, but unlike a medical malpractice claim and a products liability claim, where each claim could stand or fall on its own merit, Cardoza's ability to even prove her claims against the diverse defendants is intertwined with her allegations regarding the conversion and spoliation of the extracted implants. Stated differently, because of the specific spoliation issues raised, the claims against the out-of-state defendants may well depend entirely on the resolution of the claims (and any related ruling on spoliation) against the non-diverse defendants. In that sense, the two sets of claims are very closely related. Thus, the court does not find that the claims against the non-diverse defendants are fraudulently misjoined.

  5. *Discretion to Sever*

In both their Notice of Removal and in a footnote in their briefing, the DePuy Defendants suggest that the court has the discretion to sever the claims under Rule 21 and to assert

jurisdiction over the claims only against the diverse defendants. (Defs.' Combined Mem. 20 n.7.)

While some courts have followed that course of action, a number of other courts have expressed concern over such an approach. In particular, the latter group of courts has noted that a "[c]ourt may only apply Rule 21 [to sever claims] if it has subject matter jurisdiction over the claims at issue." *Cano v. Scottsdale Ins. Co.*, No. CIV-A. H-10-3530, 2011 WL 5416320, at *3 (S.D. Tex. Nov. 7, 2011); *see also Brown v. Endo Pharms., Inc.*, 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014) ("Federal courts have frowned on using the rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent.")

Assuming the court has discretion to sever, however, it would not do so here. For the same reasons discussed above concerning the relationship between the claims, the court concludes that severance is not appropriate. Cardoza's ability to prove her claims against the diverse defendants is significantly intertwined with the same issues that are raised in her claims against the non-diverse defendants. Allowing both a state court and a federal court to consider the exact same issues would lead to the possibility of inconsistent judgments and would make little practical sense.

The parties also devote a portion of their briefing to arguing whether this case is properly included in the MDL. That issue, however, is not before the court. That decision is for the Judicial Panel on Multidistrict Litigation. This court's task is to determine whether it has jurisdiction and/or whether the case should be stayed to allow the MDL court to determine the jurisdictional issues instead. Neither of these determinations require the court to analyze whether plaintiff's case is properly part of the MDL.

## C. Plaintiff's Request for Attorneys' Fees

In her motion to remand, plaintiff also asks the court to impose the costs and attorneys' fees associated with the removal. In order to do so, the court must find that there was no "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)). That standard is not met here. Like the court in *Maybank v. BB&T Corp.*, the court will not impose costs and attorneys' fees where "[d]efendants' arguments, though not ultimately persuasive on the issue of fraudulent joinder, were supported by reasonably analogous case law." No. 6:12-cv-00214-JMC, 2013 WL 4499227, at *3–4 (D.S.C. Aug. 20, 2013). Although the court has concluded that removal was improper, it cannot say that there was no objectively reasonable basis for removing. Thus, the request for attorneys' fees and costs will be denied.

## III. CONCLUSION

For the foregoing reasons, the court concludes that it lacks diversity jurisdiction in this case. It will therefore grant in part plaintiff's motion to remand, but it will deny the motion insofar as it requests attorneys' fees and costs. Defendants' motion to stay will be denied as moot.

An appropriate order will be entered.

Entered: May 8, 2019.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge